# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

MAPLE HILL HOMEOWNERS )
ASSOCIATION, a Delaware non-profit )
corporation, )
     )
          Plaintiff, )
     )
     )   C.A. No.:  CPU4-12-003085
          v. )
     )
NANCY A. NEWTON, CHIQUITA L. )
BRADLEY, KENNETH E. HOLBERT and )
JOANNE M. HOLBERT, PETER MEYER, )
ONJONET MOORE TORRY, MELAYA )
MOORE, MICHAEL D. BANTUM and )
CAROLINE P BANTUM, )
     )
          Defendants. )

Submitted: August 21, 2014
Decided: September 19, 2014

Richard L. Abbott, Esq.
Abbott Law Firm
724 Yorklyn Road, Suite 240
Hockessin, DE 19707
*Attorney for Plaintiff*

N. Christopher Griffiths
Connolly Gallagher, LLP
267 East Main Street
Newark, DE 19711
*Attorney for Defendants Kenneth E.
Holbert, Joanne M. Holbert, &
Nancy A. Newton*

Chiquita L. Bradley
9 Marlborough Court
New Castle, DE 19720
*Self-Represented Defendant*

## DECISION AFTER TRIAL

**RENNIE, J.**

**INTRODUCTION**

This is a breach of contract action arising from the alleged non-payment of Homeowner's assessment fees by Defendants Nancy A. Newton ("Newton"), Chiquita Bradley ("Bradley"), and Kenneth and Joanne Holbert ("the Holberts") to Plaintiff Maple Hill Homeowner's Association ("Maple Hill"). Trial was held on July 24, 2014.[1] This is the Court's opinion on the relief sought by Maple Hill.

**FACTUAL BACKGROUND**

Maple Hill, formerly Hampton Green Maintenance Corporation, services the residents of the Maple Hill community, a small, 24-home neighborhood in New Castle, Delaware. Jutta Douglas ("Douglas") is the current president of Maple Hill, and she has been in that position since 2005.[2] Douglas testified at trial that Maple Hill was developed in accordance with the Hampton Green Maintenance Declaration ("the Declaration"), which was enacted on June 25, 1975. Maple Hill's Board of Directors does not operate through any by-laws but rather manages the property under the terms of the Declaration. Under the Declaration, the Board of Directors may collect annual assessments from the homeowners,[3] and any assessments not paid will be considered delinquent. The Declaration also allows the Board to take legal action for the collection of assessments.[4]

---

[1] The parties submitted post-trial written summations on August 21, 2014.
[2] Douglas was not elected, but volunteers to serve on the Board of Directors of Maple Hill. Her duties include keeping track of assessment payments.
[3] The bi-annual assessments were $140.00 every six months.
[4] Pl.'s Ex. 2, p. 2. Such legal actions may include placing a lien on delinquent properties.

Maple Hill proceeded to trial in this action against three homeowners who were allegedly delinquent on their assessment payments.[5] The first homeowner, Nancy A. Newton, allegedly failed to make any payments since May of 2010. Newton allegedly set up a payment plan with Douglas, that allowed Newton to pay the entirety of the association fees for each year in or about the spring of the following year.[6] Douglas contends that Maple Hill and Newton had not set up any kind of payment plan, and that there existed no written or verbal communication to support Newton's contentions.[7] Douglas did, however, state that if a homeowner requests a payment plan, Maple Hill would accommodate such an arrangement. Douglas testified that as a result of Newton's failure to pay her assessment fees, Maple Hill placed liens on Newton's home.[8] After Newton discovered the first lien on her home, she became frustrated and stopped paying the remainder of her assessment fees.[9]

The second set of homeowners identified as delinquent on their assessment fees are the Holberts. Douglas testified that the Holberts have been delinquent on the payment of assessment

---

[5] The original suit listed the following as additional defendants: Keith W. Allen, IV, Onjonet Moore Torry and Melaya Moore, Michael D. Bantum and Caroline P. Bantum, and Peter Meyer. A dismissal of the suit against Keith W. Allen, IV was filed on March 19, 2013; a default judgment was entered against Onjonet Moore Torry and Melaya Moore on March 26, 2013; a stipulation of dismissal of the matter against Michael D. and Caroline P. Bantum was signed on May 20, 2013; and a stipulation of dismissal of the matter against Peter Meyer was signed on April 9, 2014.

[6] Newton testified that she had been paying late in the spring for years, and that she has had multiple conversations with Douglas regarding the payment of the fees under this arrangement.

[7] Douglas testified that it was a "slow process" getting Newton to pay her fees, and acknowledged that she would pay in "irregular intervals."

[8] A lien was filed on May 2, 2011, and another on September 7, 2012. Newton testified that she was notified of the lien by a neighbor.

[9] Newton also moved to Pennsylvania prior to the initiation of this action. She did, however, check her Delaware mailbox periodically, and acknowledged that she continued to receive the invoices for maintenance assessments.

fees, as demonstrated by the invoices mailed to the Holberts from 2009 through 2014.[10] As a result of the alleged delinquency, Maple Hill placed liens on the Holberts' home.[11]

Conversely, Kenneth Holbert ("Mr. Holbert") testified at trial that he and his wife Mrs. Holbert have attempted to pay assessment fees via certified mail to Maple Hill's post office ("P.O.") box since 2007, but that all of the envelopes have been returned as unclaimed.[12] Mr. Holbert testified that he mailed the checks via certified mail because he wanted confirmation that he did make his payments. Mr. Holbert also testified that after each return, he placed the envelope, unopened, in a safe deposit box.[13]

Douglas testified that she did not receive any of the letters sent via certified mail to Maple Hill's P.O. box, even though she checks the box every two to three weeks. Douglas also testified that she had never, in any of the times she checked the box, seen a notice indicating that she had a certified letter waiting to be claimed at the post office. The Holberts eventually sought legal help from Max Walton, Esquire, who advised the Holberts to send Douglas a check for the total of all the past assessments, and to deliver the envelope to Douglas via special process server. Douglas testified that she did receive this envelope, but she refused to open it. Instead, she personally returned the envelope to Mr. Walton's law firm and continued to maintain that the Holberts were delinquent on their assessment payments.

---

[10] Pl.'s Ex. 15. The invoices introduced at trial are dated October 5, 2009, August 18, 2010, March 28, 2011, March 23, 2012, and January 11, 2014.

[11] The initial lien was filed on December 30, 2009, and renewed on November 10, 2010, April 18, 2011, and then re-filed on September 7, 2012. Mr. Holbert testified that he did not receive any correspondence regarding the lien, and that he found out about its existence from a neighbor.

[12] Maple Hill's P.O. Box was the designated address for the homeowners to send their assessment payments.

[13] Mr. Holbert opened the envelopes at trial. The envelopes contained checks and accompanying requests for books and records from Maple Hill. *See* Def.'s Ex. 26.

The third allegedly delinquent homeowner is Chiquita Bradley. Bradley has not paid any assessment fees since she moved into the community in 2005, even though Maple Hill has sent her reminders and invoices to pay. Bradley cites not being provided with documentation regarding the maintenance corporation and not knowing to whom she should send her money, as her reason for not paying the fees. Bradley stated that after a neighbor informed her that Maple Hill had placed a lien on her property, she mailed a letter to Maple Hill requesting information. She did not receive a response. Douglas testified that she has only spoken to Bradley once, when Bradley first moved to the community, and she does not recall receiving any correspondence from Bradley requesting information. Bradley testified that she ceased her attempts to receive documentation from Maple Hill after two years, but still failed to pay her assessments.

## DISCUSSION

In order to prevail on its breach of contract claim against each of the three defendants, Maple Hill must prove the following elements by a preponderance of the evidence: (1) the existence of a contract; (2) that the defendant breached an obligation imposed by the contract; and (3) that the plaintiff incurred damages as a result of the breach.[14]

Both Newton and the Holberts agree that the Declaration forms the basis for their obligation to pay assessments to Maple Hill. Bradley, however, alleges that she has never received copies of the operative documents for Maple Hill, and thus, questioned to whom she should make her assessment payments. Bradley testified that if she had received copies of the documents, she would have paid. The Declaration is a document of public record and it requires all homeowners in the Maple Hill Community to pay fees. Bradley is a homeowner in the Maple

---

[14] *Gregory v. Frazer*, 2010 WL 4262030, *1 (Del. Com. Pl. Oct. 8, 2010); *VLIW Technology, LLC v. Hewlett-Packard, Co.,* 840 A.2d 606, 612 (Del. 2003).

Hill Community, and therefore a party required to pay under the Declaration. The Declaration is a contract between Bradley and Maple Hill. Thus, the Court will consider the first element of a breach of contract claim, the existence of a contract, to have been proven by a preponderance of the evidence. Next, the Court will discuss breach and damages, and whether Plaintiff has satisfied those elements with respect to the individual defendants.

## I. NANCY NEWTON

Newton testified that she did pay her yearly assessments in or around the spring of each year, based upon a verbal agreement that she reached with Douglas. Douglas testified at trial that no such agreement existed. The Court does not find Douglas' testimony on this point to be credible because in her own letter to Newton, she references the spring arrangement.[15] Thus, the Court finds that Newton paid her assessments under a pre-arranged agreement with Maple Hill. The record evidence demonstrates that Newton's last payment was made in March of 2010, in the amount of $140.00 for the first half of that year. Thus, under Newton's payment arrangement, her next payment for $280.00 (the second half of 2010 and the first half of 2011) would have been due in the spring of 2011. Bradley placed a lien on Newton's property on May 2, 2011. Newton testified that she stopped paying the assessments altogether after she discovered that Maple Hill had placed a lien on her home in violation of their agreement to pay on an alternate schedule. Based on the arrangement for Newton to pay in the spring and Douglas' trial testimony that Newton was typically a "slow pay", the Court finds that Bradley prematurely filed the first lien in May of 2011. Thus, Newton will not be responsible for late fees and lien costs up until that filing. However, Newton's defense that she ceased making any future assessment

---

[15] *See* Defs.' Ex. 22 (indicating that there was an agreement to pay the assessments in the spring of each year).

payments due to her frustration about the May 2011 lien filing is not valid. Even though the lien was filed in violation of the payment arrangement, Newton had an obligation to pay her future assessments.[16]

Therefore, the calculation of the lien and late fees owed by Newton will begin from after May 2011, the date the first lien was filed. Newton is responsible for the assessments owed prior to May 2, 2011 but without the late and lien fees. Newton is also responsible for the assessments coupled with late fees and lien costs from the May 2011 period to the September 2012 lien filing. At trial, Douglas presented invoices dated July 25, 2011 and January 11, 2014,[17] attempting to prove that Newton owes a total of $1,972.79 to Maple Hill. This total purports to represent all association fees and assessed late fees that accrued prior to the filing of the initial lien through and including the September 2012 lien. Based on the Court's re-calculation, the total principal amount of assessments owed by Newton from the second half of 2010 through September 2012, the date the last lien against her was filed, is $700.00. The total amount of late fees owed, calculated from May 2011 through September 2012, is $44.18. The lien fees are capped at $47.00, the actual cost to file a lien.[18] Accordingly, the total amount due and owing by Newton, including late fees and lien fees, from May 2010 through September 2012 is $791.18.

---

[16] *See Park Centre Condominium Council v. Epps*, 1997 WL 817875 (Del.Super. May 16, 1997) (holding that the obligation to pay assessments of the condominium association is not dependent upon the fulfillment of any obligation which the association may owe to the homeowner).

[17] Pl.'s Ex. 17. Although Plaintiffs introduced exhibits at trial referencing amounts due through January 2014, the Complaint only requests assessments and late fees, set forth in various 2012 lien filings. Also, the damages requested by Plaintiff against Newton were limited to September 2012, the date of the last lien filed against Newton. Therefore, the Court will assess damages as of that date.

[18] The amount charged by Douglas as lien fees is $215.00. *See* Pl.'s Ex. 17. The cost to file a lien is $47.00. Douglas testified that the additional fees added onto the $47.00 charge constitute "administrative fees" related to the filing. The Court does not find any documentation regarding such fees, nor does it find any notice to homeowners that they were going to be charged these

## II. THE HOLBERTS

Mr. Holbert testified that he and Mrs. Holbert attempted to pay their assessment fees since 2007, but that Douglas would not pick up the certified mailings containing the checks. At trial, counsel for the Holberts opened each of the certified envelopes that contained the Holberts' assessment payments for the 2007 through 2011 assessment years. [19]   Each of these mailings was sent to the Maple Hill Homeowners Association in the care of Douglas at the P.O. Box address designated by Maple Hill for mailing payments. Douglas refused to claim the checks, and thus, they were returned to the Holberts as unclaimed.

It is clear from the evidence adduced at trial that these parties engaged in a "cat and mouse" game whereby the Holberts would send certified checks to the address designated for making payments and Douglas would refuse to pick up or acknowledge the payments. Douglas would then take the position that the Holberts did not make their payments and thereafter assess them with liens, late fees, and malign them in public letters to the other homeowners of Maple Hill.[20] It defies logic that payments sent via certified mail by the Holberts over a span of five years were not received or noticed by Douglas. The Court finds that Douglas intentionally refused to accept the certified mail in furtherance of her effort to malign the Holberts. This was clearly demonstrated by her acknowledgment at trial that she received an envelope that contained a check and a letter on behalf of the Holberts prepared by their attorney, Max Walton, Esquire. The envelope was delivered by a special process server and taped to her door. That check represented the entire amount of the maintenance fees on behalf of the Holberts, yet Douglas

---

additional fees.  Thus, the entries related to lien charges will be changed to $47.00.  In addition the Court will not grant any damages related to "restoration lien" filings.

[19] *See* Def.'s Ex. 26.

[20] *See* Def.'s Ex. 19.

refused to open the envelope. Instead, Douglas returned it to Mr. Walton's law offices. This was yet another effort by the Holberts to make their payments and Douglas' refusal to accept or acknowledge such payment in order to continue to lord the labels "freeloaders" and "deadbeats" over them. [21] Therefore, based on Douglas' continued refusal to accept the Holberts'payments, the Court finds that the Holberts did not breach their obligation to pay the assessment fees. If Douglas or another member of the Board had picked up each letter containing payment by the Holberts, the Holberts would have been current on their payments, and would not have been subject to liens, late payments, or attorney's fees. Maple Hill, therefore, has failed to prove by a preponderance of the evidence that the Holberts breached their obligation to pay assessment fees.

Because the Holberts did not breach their obligation to pay assessment fees, Maple Hill cannot recover any damages against them. However, within thirty days of this opinion, the Holberts will be required to pay Maple Hill the total amount of the uncashed checks for the past assessments from 2007 through 2011, which were unclaimed by Douglas.[22]

### III. CHIQUITA BRADLEY

Bradley testified at trial that she has never paid an assessment fee to Maple Hill since she purchased her home in 2005. The Court finds that Bradley had an obligation to make her annual payments, and therefore her failure to pay since she purchased her house in 2005 establishes a breach of her obligations. While Bradley argues that she did not pay because Maple Hill failed to provide her with the operative documents, the multiple invoices sent to her provided her with sufficient notice that assessment fees are required in that development and made clear where

---

[21] *Id.*

[22] The Complaint only seeks damages against the Holberts as of the date of the last lien filed against them. Although the Complaint lists that date as April 18, 2011, the trial record reflects that the last lien against the Holberts is dated September 7, 2012. *See* Pl.'s Ex. 12.

payments were to be made. Although she requested and failed to receive documentation from Douglas, Bradley could have undertaken other methods to determine her payment obligation, including asking fellow homeowners and/or checking publicly available records. Therefore, the Court finds that Bradley's explanation for her failure to pay is not persuasive, nor does it provide a reasonable excuse to overcome her payment obligation.

Douglas presented invoices dated July 28, 2012 and January 8, 2014,[23] in an attempt to establish that Bradley owes a total of $4,213.73 to Maple Hill.  As with the other Defendants, the Court calculates Bradley's delinquency from the date of the last lien filed against her, as referenced in the Complaint. Thus, the principal amount owed by Bradley from January 2006[24] to April 2011 is $1,540.00. The lien fees total $94.00. [25] The late fees for that period total $301.44. Accordingly, the total amount due and owing, including late fees, for Bradley is $1,935.44, as of April 2011.

## IV. ATTORNEY'S FEES

Within thirty days, the Defendants shall submit a response to Plaintiff's counsel's affidavit in support of his request for attorney's fees.

## CONCLUSION

For the foregoing reasons, the Court finds in favor of Maple Hill and against Defendant Nancy Newton in the amount of $791.18, plus post-judgment interest at the rate of 6% per year until paid in full.  The Court finds in favor of Defendants Kenneth and Joanne Holbert and

---

[23] Pl. Ex. 16.
[24] *See* Pl.'s Ex. 16. Although Bradley purchased her home in 2005, Plaintiff's Exhibits indicate that Bradley was first charged assessment fees on February 28, 2006.
[25] *See* Pl.'s Ex. 14.

against Maple Hill. However, the Holberts shall pay the principal amount of their past assessments from the second quarter of 2007 through September 2011 to Maple Hill. Finally, the Court finds in favor of Maple Hill and against Defendant Chiquita Bradley in the amount of $1,935.44, plus post-judgment interest at the rate of 6% per year until paid in full.

**IT IS SO ORDERED this 19th day of September, 2014.**

_____

The Honorable Sheldon K. Rennie,
Judge

11